UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


MARTHA M. W,[1]                                    Case No.: 6:18-cv-702-MK

                                   Plaintiff,      OPINION AND ORDER

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

                                   Defendant.
_____


JAMIE EVANS
Evans & Evans, PC
610 SW Broadway, Suite 405
Portland, OR 97205
            Attorney for Plaintiff
_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and last initial of the non-governmental party or parties in this case.
1 – OPINION AND ORDER

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-1011

SARAH MARTIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, WA 98104-7075
        Attorneys for Defendant

KASUBHAI, Magistrate Judge:

*Introduction*

Martha W. ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under ("DIB") under Title II of the Social Security Act (Act). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

*Background*

Plaintiff protectively filed for DIB on April 15, 2015, alleging disability beginning June 8, 2014. Tr. 52, 187. Her application was denied initially, and upon reconsideration. Tr. 107-35. On February 8, 2017, a hearing was held before an administrative law judge ("ALJ"). Tr. 66-106. Plaintiff testified, as did a vocational expert ("VE"). *Id*. On April 11, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 49. On February 27, 2018, the Appeals

2 – OPINION AND ORDER

Council denied Plaintiff's request for review, making the ALJ's decision, the final decision of the Commissioner. Tr. 1. Plaintiff timely filed this request for district court review.

Born June 4, 1953, Plaintiff was 61 years old at the time of her alleged disability onset. Tr. 107. Plaintiff completed two years of college and has degrees in respiratory therapy and registered nursing. Tr. 71, 229. She worked in various nursing capacities at an assisted living center from 2002 through 2013, taking on more of a managerial and behavior risk management role in 2004 due to pains in her hands. Tr. 72, 75-76, 208, 229. Beginning in April 2014, Plaintiff underwent eight laser eye surgeries to correct retinal tears, macular puckering, and cataracts. Tr. 80, 406-92, 503-14. She alleged disability due to low level vision from scarring of retina and macula, dissociated nystagmus, depression, and rheumatoid arthritis of her hands, spine, and knees. Tr. 228.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If the claimant does not have a medically determinable, severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled. *Yuckert*, 482 U.S. at 141.

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's record. *See* 20 C.F.R § 404.1520(e). The RFC is an estimate of the claimant's

capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis, despite limitations imposed by the claimant's impairments. *See* § 404.1545; *see also* SSR 96-8p, 1996 WL 374184.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141 – 42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled.

*The ALJ's Findings*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 8, 2014, the alleged onset date. Tr. 54. The ALJ also found that Plaintiff met the insured status requirements through December 31, 2018. *Id.*

At step two, the ALJ found Plaintiff had severe visual impairment. *Id.* The ALJ found that Plaintiff's Heberden's and Bouchard's nodes in her hands were non-severe, but that Plaintiff's conditions of bilateral hand disorder and depression were not medically determinable impairments. Tr. 54-55.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("The Listing"). Tr. 55.

Next, the ALJ found that Plaintiff had the RFC to perform:

> a full range a work at all exertional levels but with the following
> non-exertional limitations: [s]he should have no exposure to
> hazards, such as moving mechanical parts, unprotected heights or
> operate a motor vehicle as part of her work duties.  She can
> perform tasks that involve occasional near and far visual acuity.
> She can perform tasks that involve occasional field of vision.

Tr. 55.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work.

Tr. 59.  At step five, based on the VE's testimony, the ALJ determined that Plaintiff would be

able to perform the jobs of Hospital Cleaner, and Laundry Laborer, both of which existed in

significant numbers in the national economy.  Tr. 60.

*Discussion*

Plaintiff alleges the ALJ erred by: (1) improperly discrediting her subjective symptom

claims; (2) improperly discrediting the lay witness testimony of Plaintiff's husband; (3)

improperly weighing medical opinion evidence; and (4) failing to account for all of Plaintiff's

impairments in the RFC.

## I.    Subjective Symptom Testimony

### A.    Analytical Framework

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of the claimant's symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

2009).  "First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment 'which could reasonably be expected to produce the pain

or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

(quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).  When doing so, "the

claimant need not show that her impairment could reasonably be expected to cause the severity

of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Examples of clear-and-convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony about the nature, severity, and effect of the symptoms complained of from physicians and third parties. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1040; *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an

individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.  The Commissioner recommends assessing:  (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file.  *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

B.  Vision Impairment

Plaintiff testified that she was dizzy most of the time because her eyes did not "work together."  Tr. 79.  She stated that her vision changed constantly.  Tr. 80.  Following eight eye

surgeries, she had one eye that saw one thing while the other eye saw something different, causing "ghosting." Tr. 80. Plaintiff testified that she had some "cloudy spaces" in her left eye. Tr. 80. Plaintiff also stated that she had light sensitivity which was helped by a flashlight and a magnifying glass. Tr. 80. She stated that she could read something with a white glow background and black block print, but not for any duration before she felt nauseous. Tr. 81. She stated that she could only read a few sentences at a time without difficulty. Tr. 86. She said that reading glasses did not help because they did not have prisms and that prisms would only help about 80 percent. Tr. 88. Overall, she said that reading was difficult and that she switched to audio books. Tr. 81.

Plaintiff testified that she still had a driver's license but did not drive. Tr. 71. Plaintiff testified that she had difficulty with balance and could no longer use a step stool and that the frequently used items in the cupboards were moved to reaching level. Tr. 85-86. She said that she and her husband had the stairs in their home carpeted so that she could better navigate them. Tr. 86. Plaintiff stated that she could not use sharp knives anymore because she was unable to see "where the knife ends and my finger begins." Tr. 86.

In a typical day, Plaintiff dressed, talked to her daughters on the phone, made breakfast, lunch, and dinner, cleaned up after each meal, and listened to an audio book. Tr. 83-84. She also performed household chores like dusting, straightening, and making beds. Plaintiff stated that her husband did the laundry and vacuuming. Tr. 83-84. Her husband also took care of the shopping because the lights in stores bothered her and she became confused, bumped into people, and dropped things. Tr. 83-84, 88.

In her function report, Plaintiff stated that she had "extreme difficulty" reading and writing on forms but could complete them slowly, although her "good eye" lost focus if she used

it continuously. Tr. 200. Plaintiff stated that she had difficulty navigating her way to the bathroom at night due to poor night vision. Tr. 201-02. She stated that she prepared meals daily but with "convenience foods" and that it usually took her ten to fifteen minutes to prepare a meal. Tr. 202. Plaintiff stated that she cut herself frequently when slicing or chopping so she did not do that very often any more, and that she had trouble performing tasks that required depth perception, like pouring. Tr. 202. As for household chores, she stated that she could do anything that did not require a step stool or ladder. Tr. 203.

She stated that she liked to go on walks on nice days with a friend or her husband. Tr. 203. She stated that she shopped in stores for groceries and personal products and that her friend drove her. Tr. 203.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 56.

1.     Objective Medical Evidence

 The ALJ found that the objective medical evidence did not support Plaintiff's claims of disabling vision impairment and noted that Plaintiff's visual acuity in May 2015 was 20/25 in her right eye and 20/80 in her left eye, and in October 2015, her corrected right eye acuity was 20/20 and left eye acuity was 20/30. Tr. 57.

Plaintiff argues the ALJ erroneously relied on visual acuity measurements to discredit her claims of disabling impaired vision, asserting that the visual acuity measurements of each eye independently do not represent her paired vision problems, nor her blurred areas of vision. Plaintiff argues that the "longitudinal medical evidence" supports her claims of blurred vision,

ghosting, problems with depth perception, balance, eye fatigue, and difficulty reading. In support, she points to documentation of her own reports to treatment providers, and suggests that since no ophthalmologist questioned her reported symptoms, her symptom allegations are supported by the medical evidence.

Objective evidence, however, is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513. "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g). Accordingly, a claimant's statements regarding her symptoms cannot be transformed into objective medical evidence merely because they are recorded, uncontradicted, in her medical records. After a careful review of the record the Court is unable to find, and Plaintiff does not cite, any objective medical evidence supporting the extent of Plaintiff's alleged symptoms. Nor do any of the exam records discuss the misleading nature of the visual acuity measurements. Accordingly, where an ALJ's interpretation of the medical evidence is rational, it must be upheld. *Batson*, 359 F.3d at 1193. An ALJ may not discredit a claimant's subjective symptom allegations based solely on a lack of medical evidence; however, it may be considered among other factors. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

　　2.　　Activities of Daily Living

The ALJ also discredited Plaintiff's impairment allegations based on her activities of daily living ("ADLs"). The ALJ noted that Plaintiff reported being able to do a "wide variety of activity with her visual impairment," including making meals, dusting, making the bed, going shopping, and going for walks. Tr. 57. Plaintiff argues that the ALJ mischaracterized her ability to achieve these tasks, and that the ADLs neither contradict her testimony nor translate into an

ability to function in the workplace.

ADLs may provide a basis for discrediting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In order to properly discredit subjective symptom testimony based upon ADLs, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Here, the ALJ found Plaintiff's ability to perform ADLs conflicted with her claims of debilitating poor vision and related side effects.

Plaintiff points out that although she cooked, she had to take safety precautions to avoid cutting herself with a knife, and that while she cleaned, she was unable to discern whether she

left soil behind.  Plaintiff argues that the ALJ failed to consider the constrained circumstances under which Plaintiff performed these ADLs, and therefore, the ALJ's reliance on them to discredit Plaintiff's claims was error.  While Plaintiff offers another interpretation of the record, the ALJ's finding must be upheld if it is based on substantial evidence in the record.  *Massachi*, 486 F.3d at 1152.

In Plaintiff's function report, she stated that she liked to keep busy, although she had slowed down as a consequence of dizziness with quick head movements and light sensitivities.  Tr. 203.  Nonetheless, she reported being able to make three meals a day, take care of dusting, make the bed, and go for walks.  Tr. 203.  She stated that she had good endurance and was functional although she moved "like an old lady" out of safety concerns.  Tr. 205.

Moreover, Plaintiff's husband, in a third-party function report, stated that Plaintiff spent two to three hours a day preparing meals, noting that she had to proceed with caution and that it took her more time.  Tr. 244, 246.  He reported that she spent one to two hours a day taking care of the indoor cleaning, organizing, and laundry. Tr. 244.  He also noted that she went to the gym on a regular basis.  Tr. 246.  In sum, after a careful review of the record, the Court finds that the ALJ could reasonably conclude that Plaintiff's ADLs conflicted with her claims of disabling vision impairment.

Accordingly, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, to discredit Plaintiff's subjective symptom claims.

C.    Physical limitations

Plaintiff argues the ALJ erred by discrediting Plaintiff's subjective symptom testimony regarding her hands and other physical limitations based upon the one-time consultative exam performed by Kim Webster, M.D, in August 2015.

Plaintiff testified that she had trouble standing because of pain in her feet and that her knees buckled. Tr. 79. She explained that she was seen by a podiatrist who recommended orthotic inserts, but because the inserts were expensive and not covered by insurance, she declined to try them. Tr. 79. Plaintiff testified that her hands were getting weaker and weaker and that she had stopped doing floor nursing some time in 2004 due to "electrical" pain in her hands and wrists. Tr. 75-76, 79. Plaintiff testified that in 2003 she had cortisone shots in her joints and hands and had hand braces made; she still used the braces when she felt severe aches and "little jolts of electricity" in her thumbs. Tr. 80. However, Plaintiff stated that none of the past therapies really alleviated her pain and that she tried to avoid lifting or squeezing with her hands. Tr. 80. Plaintiff stated that she did not want to live on pain pills. Tr. 80. Plaintiff stated that she had trouble picking things up with her thumb and forefinger, and could not articulate buttons. Tr. 87. Plaintiff stated that she adapted her wardrobe to be "easy on, easy off." Tr. 81. She testified that she has difficulty maintaining her grip without pain and estimated that she could lift up to five pounds before feeling discomfort, but she could not grip and pull things toward her. Tr. 87.

The ALJ found that the medical record did not support Plaintiff's alleged physical limitations. Tr. 56. Indeed, after a careful review of the record, the Court is unable to find any physical exam notes, objective imaging, or any other treatment record indicating Plaintiff complained of or sought care for pain during the relevant period. Although there are references to historic diagnoses of arthritis, (tr. 323, 336, 349, 379), there are no indications that Plaintiff sought treatment for pain during the relevant period. To the contrary, she reported using heat therapy to help with pain and that she did not usually take any medications. Tr. 379. The record

also indicates that as of March 30, 2014, Plaintiff exercised three to four times per week by walking, running, and weight lifting. Tr. 323.

Moreover, the ALJ also noted that Dr. Webster's physical exam findings conflicted with Plaintiff's claims. Tr. 57-58. For example, Plaintiff was able to grip and hold objects securely in her hands and she exhibited fine motor skills –such as the ability to peel apart the wrapper on a band-aid and the ability to touch her thumb to each finger in rapid succession. Tr. 57, 400. Dr. Webster observed that Plaintiff exhibited a full range of motion in her wrist joints bilaterally, and in all fingers and both thumbs. Tr. 400. While Dr. Webster observed that Plaintiff had some tenderness to palpation and Heberden's nodes at the distal interphalangeal joints of both index fingers, and of the fifth fingers bilaterally, she found that these did not interfere with any function. Tr. 400.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's subjective physical limitations testimony.

## II. Lay Witness Testimony

Plaintiff argues that the ALJ erred by failing to provide a germane reason for discrediting the statements of Plaintiff's husband, Mr. W.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout, supra*, 454 F.3d at 1053. "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Indeed, the regulations expressly permit the ALJ to consider evidence regarding the severity of a claimant's impairments from non-medical sources such as parents, spouses, siblings, caregivers, and other relatives. 20 C.F.R. § 404.1513. When an ALJ

has properly discredited a claimant's subjective claims based on "well-supported clear and convincing reasons," the ALJ may properly reject lay witness testimony that merely reiterates the claimant's claims. *Molina*, 674 F.3d at 1121.

As noted above, in May 2015, Mr. W. submitted a third-party function report where he described Plaintiff's abilities to independently prepare meals and take care of household chores including laundry, and going shopping with a companion for transportation. Tr. 246. He opined that Plaintiff could not perform her past work as a nurse because she would be unable to accurately read doctors' orders and medical records, and observed that she had difficulty reading anything but very large print. Tr. 242, 247. Mr. W. stated that Plaintiff could read large print books, but they tended to give her a headache. Mr. W. stated that Plaintiff was unable to drive due to her poor vision. Tr. 245.

In February 2017, Mr. W. submitted a letter stating that Plaintiff was no longer able to go shopping because the store lighting caused her to feel nauseated. Tr. 289. He stated that she was no longer able to read large print books and instead listened to audio books. *Id*. Mr. W. stated that he holds Plaintiff's arm to navigate outdoor obstacles due to Plaintiff's poor depth perception and the associated risk of falling. *Id*. Although he indicated that Plaintiff still prepared meals, he stated he tried to take care of tasks that involve using a knife or step stool. *Id*.

The ALJ gave partial weight to Mr. W.'s opinions, but found that the wide variety of activities Mr. W. reported Plaintiff could perform were inconsistent with the alleged severity of her impairments. Tr. 59. The ALJ also found that the medical records indicating Plaintiff had 20/20 corrected vision in her right eye, and 20/30 vision in her left eye, was inconsistent with Mr. W.'s opinion. *Id*; *see* tr. 500. Moreover, the ALJ found that the medical record as a whole did not support the severity of Mr. W.'s opinions. *Id*.

As noted above, the ALJ properly discredited Plaintiff's subjective symptom claims based upon inconsistencies between her claimed level of impairment and her ADLs. Thus, to the extent Mr. W.'s opinion averred the same or substantially similar symptoms, the ALJ provided a germane reason to discredit Mr. W.'s opinion based upon Plaintiff's level of activity. *Molina*, 674 F.3d at 1121; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2010). Additionally, an ALJ may properly discredit lay witness testimony that is inconsistent with medical evidence.[2] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ found that the Mr. W.'s opinion about the severity of Plaintiff's visual impairment conflicted with her visual acuity. Accordingly, because the ALJ provided at least one germane reason to discount Mr. W.'s testimony, there was no error.

### III. Medical Opinion Evidence

Plaintiff argues the ALJ erred by giving "great weight" to Dr. Webster's opinion that Plaintiff had no exertional or manipulative limitations.

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine,* 574 F.3d at 692 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The uncontradicted opinion of an examining physician can be rejected only for "clear and convincing" reasons while an opinion

---

[2] In contrast, a lack of support in the medical record is not a germane reason to discredit lay witness testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Although Plaintiff argues the ALJ improperly discredited Mr. W.'s opinion base on a lack of supporting medical evidence, it is clear that the ALJ also found the medical evidence was inconsistent with Mr. W.'s reports. Thus, to the extent the ALJ discredited Mr. W.'s opinion based upon a lack of supporting medical evidence, any error was harmless because the ALJ provided other germane reasons to discount his testimony. *See Bayliss v. Barnhart*, 427 F.3d at 1218.

contradicted by another doctor can be rejected only for specific and legitimate reasons that are support by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Evidence is inconsistent when it conflicts with other evidence or contains an internal conflict. 20 C.F.R. § 404.1520b.

During the consultative physical exam, Dr. Webster observed that Plaintiff was able to "grip and hold objects securely to the palm with the last three digits[,] . . . grasp and manipulate both large and small objects with the first three digits," and use scissors, as well as peel apart a Band-Aid wrapper. Tr. 400. Dr. Webster also observed that Plaintiff had good bulk, muscle tone, and 5/5 strength in all extremities, including her wrists. Tr. 401. Plaintiff's grip strength measured 5 psi in her right hand, and 8 psi on her left hand. *Id.* Dr. Webster observed that Plaintiff "move[d] around easily," and was able to get on and off of the examination table without difficulty, and was able to "go from a sitting to supine and supine to sitting positon" without difficulty. Tr. 399. Dr. Webster opined that Plaintiff had no standing, walking, sitting, lifting, or carrying restrictions, and that she had no postural or manipulative limitations. Tr. 401-02. The ALJ gave great weight to this portion of Dr. Webster's opinion based upon the doctor's physical exam findings. Tr. 58.

Plaintiff argues that the difference in measured grip strength between her right and left hands conflicts with Dr. Webster's opinion that Plaintiff's grasping ability was completely intact. Tr. 400-01. Plaintiff offers no evidence, though, to suggest her weakest grip strength was in a

range indicating impairment, and hence in conflict with Dr. Webster's conclusion. Plaintiff also argues that Dr. Webster's opinion is flawed because she failed to detail the manner in which Plaintiff's strength and grip were tested. However, Dr. Webster stated that "[a]ll measures were performed in accordance with AMA Guidelines for disability examinations." Tr. 396. Moreover, to the extent there are any ambiguities regarding the examining methods employed, the ALJ is the "final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42.

Plaintiff also argues that the ALJ erred by failing to consider that non-examining state agency physician, J. Scott Pritchard, D.O., opined that Dr. Webster's opinion should only be given partial weight, apparently because it was a one-time exam. *See* tr. 116-17. Notwithstanding that agency rules contemplate one-time consultative exams and that, by itself, is not a legitimate reason to discredit a doctor's opinion, it is unclear how this consideration would have altered the ALJ's conclusions since Dr. Pritchard assigned no manipulative or postural limitations, found Plaintiff's vision impairments to be non-severe, and found Plaintiff to be not disabled.[3] *Id*; 20 C.F.R. §§ 404.1519, 404.1527. Significantly, the ALJ only gave partial weight to Dr. Webster's opinion in its entirety, finding that Dr. Webster's opinion that Plaintiff had significant visual deficits was inconsistent with the exam findings, appeared to be based primarily on Plaintiff's subjective complaints, was vague, and failed to include any specific vocational limitations. Tr. 58.

Thus, to the extent the ALJ erred by failing to consider the conflicting opinion of a non-

---

[3] Notably, the ALJ gave "little weight" to Dr. Pritchard's opinion that Plaintiff's vision impairment was non-severe, noting that Dr. Pritchard did not have the opportunity to review Plaintiff's most recent treatment records. Tr. 58.

examining state agency physician, any error was harmless because both doctors found Plaintiff to have no postural or manipulative limitations.

**IV.     RFC Formulation**

Plaintiff argues the ALJ erred by failing to incorporate all of Plaintiff's limitations into the RFC.

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. § 404.1545.  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  *Id*.; SSR 96-8p, 1996 WL 374184.  In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).  "The RFC must always consider and address medical source opinions."  SSR 96-8p at *7.

A.     Visual Limitations

Plaintiff argues that the portion of the RFC that limits Plaintiff to occasional near and far visual acuity and tasks that involve occasional field of vision fails to capture her vision limitations.  She argues that no treating or consulting physician has opined that Plaintiff's visual limitations only restrict her near and far acuity, or that she has a full field of vision at any time. That may be true, but the question is not whether the evidence negates an assumption of impairment, but whether any functional limitations are supported by substantial evidence.  Here,

the ALJ found that Plaintiff was unable to perform her past work relevant work due to vision impairment. This conclusion was based upon the medical evidence, including opinions from Plaintiff's treating ophthalmologists, Garrett Scott, M.D., and Andreas Lauer, M.D.

Dr. Scott's opinion, dated October 30, 2015, indicated Plaintiff had 20/20 corrected acuity in her right eye and 20/30 corrected acuity in her left eye, and "persistent epiretinal membrane" and "distortion of her central retina in the left eye." Tr. 500. Dr. Scott stated that this distortion made Plaintiff feel off balance and that due to this, and the fact that she was unable to review forms and notes, she would not be able to return to her previous work as a risk manager nurse. *Id*. Likewise, in October 2015, Dr. Lauer opined that, based on Plaintiff's "description of her visual experience," she would be unable to perform her past work as a risk management nurse. Tr. 498. Neither doctor opined as to any other functional limitation related to Plaintiff's vision impairments. Notably, both doctors relied upon Plaintiff's descriptions of her impairments to support their opinions.

The ALJ accounted for Plaintiff's vision limitations by limiting her to only occasional near and far visual acuity and occasional field of vision. Tr. 55. The ALJ accounted for Plaintiff's distorted vision and related balance problems by excluding tasks that involve hazards like moving mechanical parts, unprotected heights, or operating a motor vehicle. *Id*. Accordingly, the Court must affirm an RFC where the ALJ applied the proper legal standard and took into account those limitations that were supported by the record. The ALJ was not required to provide additional functional limitations for impairments she found neither credible nor supported by the record. *Bayliss*, 427 F.3d at 1217.

\\

\\

21 – OPINION AND ORDER

B.     Physical Limitations and the Record as a Whole

As noted above, the ALJ properly discredited Plaintiff's physical impairment claims.
Having done so, the ALJ did not err by failing to include any functional limitations in the RFC.
*Id*.  Plaintiff, argues however, that the Court should consider medical records submitted after the
ALJ issued the unfavorable decision and included in the record by the Appeals Council.  Plaintiff
argues that the record as whole supports manipulative and exertional limitations.

In October 2017, Plaintiff submitted new medical evidence related to her hands to the
Appeals Council.  Tr. 8-28.  The evidence consists of an October 2017 opinion letter from
Plaintiff's primary care physician, Dr. Samuel Crane, progress notes from Plaintiff's September
2017 occupational therapy sessions, and bilateral hand x-ray findings from September 2017.  The
Appeals Council found that the evidence generated and submitted after the ALJ issued her
opinion did not relate to the period at issue.  Tr. 2.  The Court agrees.

The Appeals Council is required to consider additional evidence only where it related to
the period on or before the date of the ALJ's hearing decision and a claimant shows good cause
as to why the evidence was not submitted earlier.  20 C.F.R. § 404.970.  Here, the Appeals
Council made the new evidence part of the record, but found it was not related to the period at
issue.  Tr. 2.  This Court may consider the opinion of a physician that was "rejected by the
Appeals Council, to determine whether, in light of the record as a whole, the ALJ's decision was
supported by substantial evidence and was free of legal error."  *Taylor v. Comm'r of Soc. Sec.
Admin*., 659 F.3d 1228, 1232 (9th Cir. 2011).  "[W]hen the Appeals Council considers new
evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the
administrative record which the district court must consider when reviewing the Commissioner's
final decision for substantial evidence."  Here, it appears that the Appeals Council did not

"consider" the new evidence due to its determination that the evidence did not pertain to the period at issue.

Plaintiff argues that the new evidence relates back to her pre-ALJ hearing decision because Dr. Crane stated that Plaintiff has had bilateral hand disabilities since 2001. Tr. 9. The basis for that opinion, however, is ambiguous. Dr. Crane noted that Plaintiff received care from another medical provider in 2001. Tr. 9. It is unclear whether Dr. Crane reviewed medical records from that provider or whether his opinion was based upon Plaintiff's recitation of her medical history. In any event, any records from 2001 indicating Plaintiff suffered bilateral hand disabilities are not part of the record. Moreover, there are no treatment records during the relevant period indicating Dr. Crane had been Plaintiff's primary care physician. Dr. Crane's letter does not indicate the length of time he has been Plaintiff's primary care provider. Thus, Dr. Crane's statements regarding Plaintiff's medical history do not appear to be based on personal knowledge derived from a long-time physician-patient relationship. Instead, it appears that Dr. Crane based his opinion regarding Plaintiff's functional limitations and the progressive nature of her impairments on Plaintiff's own recitation of her medical history combined with medical evaluations generated *after* the ALJ's hearing decision. Accordingly, the newly submitted evidence does not relate to the period of disability at issue and the Court declines to consider the ALJ's decision in light of the new evidence.

In sum, the ALJ's decision was supported by substantial evidence in the record and free of harmful legal error.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is affirmed.

DATED this <u>21st</u> March 2019.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge
